IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RICHARD LAWRENCE STEWART, | **Nos. C 12-01474 RS** |
| Petitioner | |
| v. | **ORDER DENYING PETITION FOR HABEAS CORPUS** |
| RALPH M. DIAZ. Warden of California Substance Abuse Treatment Facility and State Prison, at Corcoran, California, | |
| Respondent. | |

I. INTRODUCTION

This is a federal habeas corpus action filed by represented state prisoner Richard Lawrence Stewart pursuant to 28 U.S.C. § 2254.  Petitioner challenges his sentence with three claims for relief: (1) his sentence violates the Eighth Amendment's ban on cruel and unusual punishment; (2) trial counsel provided ineffective assistance in violation of the Sixth Amendment; (3) the attorney who handled his two motions to withdraw his no contest plea provided ineffective assistance.  For the reasons set forth below, the petition will be denied.

## II. BACKGROUND

Petitioner, the youngest of nine children, grew up in a broken San Francisco home. He lived with his maternal grandfather, but had little structure or supervision in his life. He obtained only a second to third grade level of education. At the time of his sentencing hearing he was 37 years old, and could still not read or write.

At age 15, petitioner became addicted to crack cocaine. He continued to use the drug daily until his arrest in this case, and sold or stole drugs to support his addiction. Petitioner suffers from severe depression and anxiety and has twice attempted suicide. Prior to his arrest, petitioner was participating in psychiatric sessions through the Parole Outpatient Clinic and taking Zoloft for his anxiety. Due to his mental health and drug abuse issues, petitioner is unable to work and was collecting social security prior to his arrest.

In June 1987, petitioner pled no contest to two counts of forcible oral copulation in concert. The charges arose out of a single incident in 1986 when petitioner was 16 years old. During his meeting with the probation officer in this case, petitioner denied committing the crime, and explained that the victim was a prostitute who was angry because he failed to provide her with cocaine. Petitioner was sentenced to seven years, four months in prison. He was paroled after a little more than three years. Both convictions were charged as strikes in the present case.

In June 1992, petitioner beat a victim with a golf club after the victim cheated him out of a piece of rock cocaine. While petitioner and the victim were engaged, his co-defendant jumped into the victim's pickup truck in an apparent attempt to steal it. The victim tried to prevent the theft by jumping into the back of the truck, but he slipped, fell, and struck his head on the pavement. He died as a result of his injuries. Petitioner was arrested nearly two years later and pled guilty to assault with a deadly weapon. In his interview with the probation officer in this case, petitioner acknowledged responsibility and expressed remorse for the victim and his own behavior. The 1994 conviction was charged as a strike in this case.

Petitioner has also sustained non-strike felony convictions for: possession of a controlled substance in 1990; vehicle theft, evading a police officer, and transportation of narcotics in 1992;

and possession of narcotics in 2001. Additionally, petitioner was convicted of misdemeanors for being under the influence of narcotics in both 1992 and 1996. He has eight parole violations and a probation violation.

The present case arises from an incident on December 23, 2006, in which petitioner took two watch sets, worth $29.99 each, from a display table at Sears. When confronted by a security officer, petitioner admitted to taking the watches without paying for them, explaining he thought they would make nice gifts.

When meeting with his probation officer in this case, petitioner expressed regret over his past actions and a readiness to address his longstanding substance abuse addiction. The probation officer found "no compelling reason to strike" the 1994 conviction for assault with a deadly weapon, but acknowledged that, "a 25 year to life prison sentence appears excessive." Due to petitioner's mental and emotion maturity in 1986, she felt that the court would be justified in dismissing those two strikes to achieve a determinate sentence of far less than 25 years to life.

The trial court found that the three prior convictions, though distant, were "egregious and involve violence." It also noted petitioner's continuing drug use and criminality, his failure to accept responsibility for the sexual assault case, and the fact that he has never been able to remain free of custody for more than one year. Based on these factors, the court concluded that petitioner was not "outside the spirit of the Three-Strikes Law in whole or in part."

The California Court of Appeal found that petitioner's sentence did not constitute cruel or unusual punishment. It upheld the 25-year to life sentence due to petitioner's "repeated offenses," although it acknowledged that the present offense was relatively minor.

### III. LEGAL STANDARD

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S .C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. An unreasonable application of federal law differs from an incorrect application of federal law. *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011). Thus, habeas corpus is "not a substitute for ordinary error correction through appeal." *Id*. at 786. Instead, the "highly deferential standard" imposed by the statute, "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

## IV. DISCUSSION

### A. Eighth Amendment

The Eighth Amendment prohibition on cruel and unusual punishment applies when the defendant's sentence is "grossly disproportionate" to the crime. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991). The Supreme Court has set forth a three-pronged test for assessing whether a particular sentence is grossly disproportionate to the crime. The test considers: (1) the gravity of the offense and the severity of the penalty; (2) the sentence imposed for other crimes in the same

4

jurisdiction; and (3) the sentence imposed for the same crime in other jurisdictions. *Solem v. Helm*, 463 U.S. 277, 292 (1983).  In the case of recidivist offenders, the court considered the severity of the prior offenses in addition to the current offense.  *Id.* at 296-97.

The Supreme Court has upheld the validity of recidivist sentencing statutes. *See Ewing v. California*, 538 U.S. 11, 25 (2003) ("When the California Legislature enacted the three strikes law, it made a judgment that protecting the public safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime."); *Rummel v. Estelle*, 445 U.S. 263, 284-85 (1980) ("[The] primary goals of [a recidivist statute] are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities demonstrated over a period of time during which he had been convicted of and sentenced for other crimes.").  At the same time, the Supreme Court has recognized that recidivist statutes may result in a sentence so disproportionate to the underlying crime as to run afoul of the Eighth Amendment's ban on cruel and unusual punishment.  *Solem*, 463 U.S. at 279-81 (striking down life without possibility of parole sentence for defendant convicted of writing a $100 bad check).

Petitioner committed a trivial offense, normally charged as a misdemeanor, but transferred to a felony under Penal Code 666 because of a prior vehicle theft conviction 14 years earlier. Petitioner admits he has committed serious crimes in his past, most notably the conviction for forced oral copulation in concert, but contends that he was an unusually immature 16-year old and this conviction, therefore, should not have great effect on the punishment he receives now.  In support of this argument, petitioner relies on *Graham v. Florida*, 560 U.S. __, 130 S. Ct. 2011, 2030 (2010), in which the Court observed that juveniles are less culpable for their crimes than adults.  Similarly, the Court in *Roper v. Simmons*, 543 U.S. 551 (2005), found no legitimate penological justification for a sentence which "denies the juvenile offender a chance to demonstrate growth and maturity." Petitioner argues that because his convictions as a 16-year old are a "but for" cause of his life

5

sentence without eligibility for parole for 25 years, it is prohibited by the Eighth Amendment.

Unlike the cases petitioner cites, however, he was not a minor when he committed his most recent crime. While petitioner may have been less mature or less capable of appreciating the consequences of his actions as a 16-year old, such immaturity does not excuse him of the consequences of continuing to commit crimes as an adult. Moreover, the Supreme Court has made clear that one reason to preclude seemingly harsh sentences for juveniles is their ability to reform themselves as they mature. The Court in *Roper* noted that juveniles are more amenable to change than adults. *Id.* at 569-70. In *Graham* the Court went on to find no penologicial justification in a sentence which "denies the juvenile offender a chance to demonstrate growth and maturity." 130 S.Ct. at 2029. Petitioner's continuing criminal behavior, as an adult, has demonstrated he has not reformed. He has served seven prior prison terms and, in the 22 years since his first strike, he has only been free of custody for approximately one year. While these sentences have primarily been for relatively minor theft and drug-related crimes, they are an indication that petitioner is seemingly incapable of conforming his conduct to the law. The state trial court did not err in concluding that this is the type of repeat criminal conduct the California legislature intended to address when it enacted its recidivist statute. The state courts, therefore, did not act unreasonably in choosing to consider petitioner's extensive criminal history when imposing its sentence.

Furthermore, petitioner's case is distinguishable from those in which application of a recidivist statute resulted in a sentence amounting to cruel and unusual punishment. In *Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004), the Ninth Circuit concluded that the California Court of Appeal's decision rejecting defendant's Eighth Amendment claim was an unreasonable application of clearly established federal law. The defendant in *Ramirez* was arrested after stealing a VCR worth $199. *Id.* He could have been charged with a misdemeanor, but the prosecutor chose to use two nonviolent shoplifting offenses, for which he served a total of six months in county jail, to charge him with a "wobbler" offense punishable as a felony. *Id.* at 756. The Ninth Circuit reasoned that Ramirez's triggering crime did not threaten to cause grave harm to society and clearly, by itself would not justify the sentence received. *Id.* at 768. The court went on to find that his prior criminal

6

1  history consisted solely of two convictions for second-degree robbery, "serious" felonies for the
2  purposes of the three-strikes rule, but nonviolent in nature. *Id.* It determined the state court
3  mischaracterized Ramirez's criminal history when it stated that he had been given two attempts at
4  rehabilitation of which he did not take advantage. *Id.* at 774. Rather, defendant served a single jail
5  sentence, which was the only period of incarceration imposed on him prior to his three-strikes
6  sentence. *Id.* at 769. The court thus concluded that, given the nonviolent nature of Ramirez's three
7  crimes, his minimal criminal history, and that he had been incarcerated on just one occasion in
8  county jail, a sentence of 25-years-to-life was grossly disproportionate to his crime and in violation
9  of the Eighth Amendment. *Id.* at 775.

10       In the present case, as in *Ramirez*, petitioner's triggering offense would have been charged as
11 a misdemeanor, but for the prosecution's decision to use a 14-year old auto theft conviction to
12 charge the petty theft as a felony. Accordingly, as in *Ramirez*, petitioner's triggering offense, on its
13 own, would not give rise to the sentence imposed. However, unlike in *Ramirez*, petitioner has an
14 extensive criminal history that includes two different violent crimes. He has been in and out of jail
15 several times, providing him with many opportunities for rehabilitation. Even discounting the
16 violent nature of petitioner's juvenile convictions, the state court was faced with a violent assault
17 charge. Given the significant differences between the criminal histories of the defendant in *Ramirez*
18 and petitioner in the present case, it cannot be said that the state court was unreasonable in finding
19 that petitioner's extensive criminal history justified its application of the three-strikes rule.

20       In *Reyes v. Brown*, 399 F.3d 964 (9th Cir. 2005), the Ninth Circuit again looked to the nature
21 of both the triggering offense and the defendant's criminal history. It found that like in *Ramirez,*
22 defendant's triggering crime of falsifying a driver's license application was not a crime targeted at
23 another individual and thus did not threaten grave harm to society. *Id.* at 967. It then looked to
24 defendant's criminal history and found one strike for a residential burglary committed when he was
25 17 years old and which appeared to be non-violent. *Id.* at 968. The court reasoned that this strike
26 counted against the harsh sentence due to its age and its non-violent nature. *Id.* It also found a
27 conviction for armed robbery, but noted that the record did not reveal the circumstances in which

7

this robbery took place. *Id.* The court indicated that this was a departure from *Ramirez* in that it may reflect a violent past, and therefore remanded the case to further develop the facts of that robbery in order to determine whether it was sufficiently grave to justify a 26-year-to-life sentence. It may be3 inferred, therefore, that if the robbery was indeed found to have been a violent crime, it may suffice to justify the lengthy sentence imposed.

In the present case, as in *Reyes*, petitioner does have a violent criminal history. However, unlike in *Reyes,* the facts of his prior convictions are known. Petitioner expresses remorse for the accidental death of the victim that resulted in his assault with a deadly weapon conviction. The accidental death and the regret petitioner feels, however, do not change the fact that the incident arose after petitioner began beating the victim with a golf club. This act alone poses a grave threat of harm to society. Moreover, unlike in *Reyes,* the crime petitioner committed as a juvenile was a violent crime against another person. In *Reyes,* the court made clear that it was *both* the age of the crime *and* its non-violent nature that indicated it was not "grave" enough to justify the harsh sentence imposed. It cannot be said, therefore, that the state court was unreasonable in according petitioner's more violent criminal history sufficient weight to justify the sentence imposed.

B. <u>Ineffective Assistance of Counsel</u>

A claim of ineffective assistance of counsel presents a mixed question of law and fact which is reviewed de novo. *Strickland v. Washington*, 466 U.S. 668, 684 (1984). A defendant has the burden of demonstrating that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id*. at 687.

As to the first prong, the right to counsel guaranteed by the Sixth Amendment to the Constitution requires that the assistance to which a defendant is entitled is "effective." *Strickland*, 466 U.S. at 680. Ineffective assistance of counsel occurs when counsel's performance falls below an objective standard of reasonableness and the deficient performance affected the outcome. *Id*. at 688. The defendant must point to errors or omissions in the record that establish that he did not receive adequate representation. *United States v. Birges*, 723 F.2d 666, 669 (9th Cir. 1983). There is a "strong presumption that counsel's performance [fell] within the 'wide range of professional

8

assistance.'" *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (quoting *Strickland*, 466 U.S. at 689).

As to the second prong, a defendant must show that but for counsel's errors and omissions, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is sufficient to undermine confidence in the outcome. *Id*. The Supreme Court has expressed a preference of disposing of ineffective assistance claims on the ground of lack of sufficient prejudice. *Id*. at 697.

Petitioner brings two arguments to support his claim of ineffective assistance of counsel. The first is that defense counsel improperly failed to object to petitioner's 25-year-to-life sentence as cruel and unusual punishment under the United States and California Constitutions. The second is that defense counsel failed to renew petitioner's *Romero* motion upon receipt of three expert reports that documents his significant mental health problems.

Petitioner first argues there would be no tactical reason for counsel not advancing every argument possible to reduce his sentence. He states that, had counsel opposed the sentence on constitutional grounds, there is a reasonable probability that the trial court would have stricken the two 1986 convictions and imposed a lesser sentence. In support of this argument he relies on *People v. Carmony*, 127 Cal.App.4th 1066 (2005). In *Carmony*, defendant was arrested for failing to renew his sex offender registration on his birthday and pled guilty to the charge. *Id.* at 1071-72. He was sentenced under the three strikes laws to 25-years-to-life in prison and appealed. *Id.* The California Court of Appeal noted that defendant's only prior sexual offense was committed 16 years before the current offense, and that he had also been convicted for assaults on two girlfriends. *Id.* at 1080. The court concluded that the defendant's three strikes were "remote from and bear no relation to the current offense and the current offense reveals no tendency to commit additional offenses that pose a threat to public safety." *Id.* at 1080-81. It went on to "look at the offense in the abstract," and found it was a passive, nonviolent, regulatory offense. *Id.* at 1086. It then looked to defendant's probation report, which showed that "prior to the instant offense, he was acting in a
9

responsible manner." *Id*. at 1087.  The court therefore concluded the sentence amounted to cruel and unusual punishment under Article I, section 17 of the California Constitution.  *Id*. at 1089.

Defendant contends that, if the trial court had been aware of the *Carmony* case, it would not have imposed the sentence it did.  There is scant evidence, however, to support this conclusion.  The *Carmony* court made much of the fact that defendant had registered as a sex offender just one month prior to this birthday and that no information had changed since, leading him to be unaware of his requirement to register again.  *Id*. at 1072-73.  In the present case, by contrast, petitioner was not making an effort to comply with the law.  Rather, he knowingly chose to steal two items.  This choice was made after a history of various probation and parole violations, indicating yet other instances of failing to conform to the law.  The court in *Carmony* also noted that defendant had been living responsibly prior to his arrest.  Here, on the other hand, petitioner has been in and out of jail continuously since his first incarceration 22 years ago.  While petitioner declares an intent to address his drug addiction, there is no evidence to support the conclusion that he will do so diligently this time around.  Additionally, the crime in *Carmony* was described as a "passive, nonviolent, regulatory offense."  *Id*. at 1086.  Unlike a failure to properly register, theft is an active crime, regardless of its gravity, and is certainly not a regulatory offense.  Finally, the *Carmony* court concluded that petitioner's sentence violated the California Constitution.  A state court's decision on the appropriateness of the sentence under the California Constitution, however, cannot be reviewed in this Court.  *See Mendez v. Small*, 298 F.3d 1478, 1487 (9th Cir. 1994).  Thus this Court cannot opine whether the sentence imposed violates the California Constitution.  Nevertheless, given these distinctions from *Carmony*, it cannot be said that the trial court would probably have come to a different result in its sentencing decision had it been aware of the *Carmony* case.  Petitioner, therefore, cannot show that he has been prejudiced as a result of counsel not bringing the case to the court's attention.  This omission, if an error at all, is insufficient to find that counsel was not "effective" in violation of the Sixth Amendment.  Furthermore, as discussed, the sentence is not a violation of the United States Constitution.  Counsel was therefore not ineffective in choosing not to raise this objection before the state trial court.

10

     Petitioner next argues that defense counsel erred in not asking the court to reconsider its decision to consider the *Romero* pleadings in connection with his motion to withdraw his no contest plea, but not to reconsider its ruling on the *Romero* motion.  Petitioner argues the picture that emerged from the three mental health experts was one of a barely functioning adult, and that this profile gave context to his probation and parole violations.  He states a reasonably competent attorney would have asked the trial court to reconsider its ruling in light of this newly-obtained information.  Petitioner further contends that such a motion to reconsider would have changed the outcome, as the mental health evidence speaks to the seriousness of the prior strike offenses and the continuing nature of his criminality.  Finally, petitioner states the Court of Appeal's decision was based on an unreasonable determination of facts as, unlike the trial court, it was fully aware of the mental health reports.  He concludes it should have found those facts to be mitigating factors that warranted relief from his 25-year-to-life sentence.

     The Court of Appeal considered the additional facts provided by the three experts in reviewing petitioner's ineffective assistance claim.  It concluded that the state trial court was well aware of petitioner's low intelligence and psychiatric issues when it considered and ruled on his initial *Romero* motion, and that there was no evidence the expert reports would have made a difference in its initial *Romero* analysis. Ex. 6 at 19-20.  As a result, it found there was no reasonable basis for defense counsel to renew petitioner's *Romero* motion, and its failure to do so did not constitute ineffective assistance of counsel.  Petitioner has presented no evidence to suggest this conclusion was an unreasonable application of the facts.  Rather, the record shows the trial court was aware of petitioner's mental deficits, and that these, as well as other mitigating factors, were noted in the probation reports it received. Ex. 2 at 249, 267-68.  Indeed, the trial court expressed empathy for him in view of his personal and family history.  *Id.*  Yet, it found petitioner's new mental health claims to be unreliable, as they only raised at his second motion to withdraw his no contest plea, and as some expert testimony was at odds with the totality of the circumstances and with the record.  *Id.* at 268-70.

A state court's findings of fact are presumed correct, unless rebutted by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981) (deference by federal courts is required to factual determinations of all state courts). There is no clear evidence to rebut the Court of Appeal's finding that the trial court was aware of petitioner's mental limitations and psychiatric issues when it ruled on his first *Romero* motion, and that his subsequent claims were not persuasive enough to make the court reconsider its initial determination. Accordingly, its determination that defense counsel's decision not to renew the *Romero* motion was not prejudicial and therefore did not constitute ineffective assistance was not an unreasonable application of the law to the facts of this case. It follows that petitioner's counsel was no ineffective for failure to renew the *Romero* motion.[1]

## V. CONCLUSION

For the foregoing reasons, Stewart's petition for §2254 Habeas relief is hereby denied.

IT IS SO ORDERED.

Dated: 2/21/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

---

[1] The Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases. *Cooper-Smith v. Palmateer,* 397 F.3d 1236, 1244 (9th Cir. 2005). Therefore, there is no clearly established federal law in this context. *Id.; See also Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (concluding that, because there is no clearly established Supreme Court precedent that applies to this context, the court is unable to grant habeas relief on the grounds of ineffective assistance of counsel). As the state court did not act unreasonably in choosing to apply the *Strickland* standard for ineffective assistance of counsel to the facts of this non-capital case, and did not come to a clearly erroneous conclusion of law as a result, the question of whether relief may be granted on this ground at all need not be reached.